NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL MUNIZ,  Plaintiff  v.  COMMISSIONER OF SOCIAL SECURITY,  Defendant. | Civil Action No.: 10-6001 (JLL)  **OPINION** |

**LINARES**, District Judge

Presently before the Court is Plaintiff Angel D. Muniz's appeal seeking review of a final determination by Administrative Law Judge ("ALJ") James Andres denying his application for disability insurance benefits pursuant to §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. This Court has considered the submissions made in support of and in opposition to the instant appeal and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds the ALJ erred in three respects: (1) the ALJ did not explain his reasoning for rejecting competent evidence regarding whether Plaintiff met the requirements of paragraph 1.04; (2) the ALJ did not adequately explain the "C" criteria of paragraphs 12.04, 12.06, and 12.08; and (3) the ALJ did not set forth sufficient evidence to support his conclusion that Plaintiff was capable of performing his past relevant work as a cashier. Therefore, this Court remands this matter for further analysis in accordance with this Opinion.

I.     FACTS AND PROCEDURAL HISTORY

On May 14, 2007, the Plaintiff filed two applications: a Title II application for a period of disability and disability insurance benefits and a Title XVI application for Supplemental Security Income (SSI) payments. Both applications alleged disability beginning on April 30, 2007. These claims were denied initially on March 25, 2008, and again upon reconsideration on June 30, 2008. On October 6, 2009 a hearing was held before the ALJ who found that based on the application for a period of disability and disability insurance benefits, the Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. The ALJ further found that based on the application for Supplemental Security Income ("SSI"), the Plaintiff was not disabled under section 1614(a)(3)(A) of the Social Security Act. Plaintiff subsequently appealed this decision.

At the time of the hearing, Plaintiff was thirty-one years old and had graduated from the Perth Amboy High School special education program. (R. at 26, 28.) Plaintiff is about 6'1 and his weight fluctuates between 350-380 pounds. (Id. at 27-28.) Plaintiff lives by himself in an apartment in Perth Amboy, New Jersey, his mother cooks and cleans for him, and he claims that he is only capable of walking a half-a-block to a corner store. (Id. at 25, 31.) Plaintiff has never had a full-time job; however, from 2005-2007 Plaintiff was working part-time as a cashier. (Id. at 27.) Plaintiff has not worked since April 30, 2007. (Id. at 27.) Plaintiff alleges that he is unable to work due to back problems, knee problems (no ligaments in his left knee), and depression. (Id. at 27-28, 32.) Plaintiff is currently taking medication and has been treated at Raritan Bay Medical Health Center for his psychological problems for the past two years. (Id. at 30, 33.) Plaintiff has also been treated by a chiropractor twice a week for the last two years. (Id. at 33.)

Additionally, Plaintiff alleges that he is unable to stand or sit without pain for more than fifteen or twenty minutes, and is also unable to lift ten to twenty pounds. (Id. at 29.)

The record indicates that Plaintiff suffers from back pain, diabetes, obesity, knee pain, depression, anxiety, panic attacks, and impulse control disorder. (Id. at 13.) On May 11, 2007, Plaintiff checked into the emergency department at Raritan Bay Medical Center complaining of depression and told the staff that he had been cutting his arm because he lost his job and girlfriend two weeks prior. (Id. at 164, 169.) The social worker/counselor on duty indicated that the Plaintiff's problem areas were anxiety, depression, and insomnia. (Id. at 168.) The social worker further stated that Plaintiff did not have suicidal or homicidal thoughts or plans. (Id. at 172.) On July 12, 2007, Plaintiff received an MRI at Raritan Bay Medical Imaging. (Id. at 177.) On July 13, 2007, Dr. Lalitha Gumidyala issued the Radiology Report which stated the Plaintiff had "[b]road based disc herniation extending into the lateral recesses at L5-S1 resulting in bilateral neural foraminal and subarticular zone stenosis. A smaller herniation is seen at L1-2. There is diffuse facet joint anthropathy. There is no visualized cord compression." (Id.)

Next, in connection with this action, the Plaintiff underwent a psychiatric examination by Dr. Jack Baharlias on January 2, 2008. (Id. at 179.) During this examination Plaintiff was unable to remember the name of the previous president; did not know the day of the week; could not spell the word "world" backwards; only remembered five numbers forward and three numbers in reverse; and *was* able to do a three-step mathematical activity. (Id. at 180.) Dr. Baharlias determined that Plaintiff had "concentrational problems". (Id.) Additionally, Plaintiff indicated that he suffered a tragedy at age eight when his brother fell out of a three-story window while Plaintiff was in charge of him. (Id. at 181.) Plaintiff further stated that he hears his deceased brother's voice and feels his presence rubbing on his back. (Id.) Dr. Baharlias diagnosed Plaintiff

with "[m]ajor depressive disorder with psychiatric features of auditory and tactile hallucinations." (Id.) At this point in time Plaintiff was already seeing psychiatrist Dr. Jacques every two weeks for depression and anxiety at Raritan Bay Medical Health Center and was prescribed the medication Wollbutrin. (Id. at 180.)

  Then, on February 5, 2008, Plaintiff underwent a Central Jersey Medical evaluation and Dr. Marc Weber issued an Orthopedic Report. (Id. at 183.) During the physical examination, Dr. Weber noted that Plaintiff's muscle strength was 5/5 in both upper extremities, including grip and pinch strength and 5/5 in both lower extremities. (Id. at 184.) Dr. Weber indicated that Plaintiff had full range of motion in his shoulder, elbow, wrist, ankle, and cervical spine joints. (Id. at 185-186.) Dr. Weber further indicated that Plaintiff had a limited range of motion in his knees and hip due to body habitus. (Id. 185.) Dr. Weber also noted that Plaintiff had limited range of motion in his lumbar spine. (Id. at 186.) On a scale ranging from zero to ninety degrees, Plaintiff's flexion-extension of the lumbar spine was thirty degrees and ten degrees respectively. (Id.) On a scale ranging from zero to twenty-five degrees, Plaintiff's lateral flexion of the lumbar spine was twenty degrees to the right and left. (Id.) Dr. Weber's final impression of the Plaintiff was "[a] 29-year-old male with chronic back pain and a history of multiple herniated disks as well as bilateral neural foraminal stenosis. (Id. at 184.)

  At the request of the Social Security Administration, in connection with this action, Plaintiff underwent a Physical Residual Functional Capacity (RFC) Assessment by Dr. Eden Atienza on March 6, 2008. (Id. at 188.) As for exertional limitations, Dr. Atienza indicated that Plaintiff could occasionally lift or carry 20 pounds; frequently lift up to 10 pounds; stand/walk for six hours of an eight hour workday; sit for a total of six hours of an eight hour workday; and push and/or pull an unlimited amount other than as shown for lift and/or carry. (Id.) As for

postural limitations, Dr. Atienza indicated that Plaintiff could balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; crawl occasionally; and climb ramps or stairs occasionally but never climb ladders, ropes, or scaffolds. (Id. at 189.)

At the request of the Social Security Administration, in connection with this action, Plaintiff underwent a Psychiatric Review by Dr. Amy Brams on March 24, 2008. (Id. at 198.) Dr. Brams indicated that an RFC assessment was necessary for three categories: affective disorders, anxiety-related disorders, and personality Disorders. (Id.) The Plaintiff's affective disorder was "depressive disorder; his anxiety-related disorder was 'PTSD PER TP'; and his personality disorder was 'impulse central disorder'." (Id. at 201, 203, 205.) As for functional limitations, otherwise known as the "B" criteria of the listings, that Plaintiff suffered, Dr. Brams indicated moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace. (Id. at 208.) As for the "C" criteria of the listings, Dr. Brams simply indicated that the evidence does not establish the presence of the "C" criteria for the affective disorder (12.04) or the anxiety-related disorder (12.06). (Id. at 209.) On that same day Plaintiff underwent a Mental RFC assessment by Dr. Abrams. (Id. at 212.) Dr. Abrams concluded that the Plaintiff, "is able to follow simple instructions, attend and concentrate, keep adequate pace and persist, relate and adapt to routine tasks in a work situation." (Id. at 214.)

Furthermore, a DDS Disability Worksheet was submitted by the DDS regarding the Plaintiff from May 18, 2007 – March 25, 2008.  The DDS concluded that "[t]he total RFC assessment is as follows full range of light.  The claimant describes his PRW (previous work) as sedentary.  The DOT describes his PRW as light with SVP of 2.  The claimant has mental impairment.  The Mental RFC assessment allows the claimant to perform the basic mental

demands of unskilled work. The claimant's RFC/Mental RFC does not prevent him from returning to his PRW as he describes it and as it is customarily performed in the national economy. Accordingly the disability claim is denied." (Id. at 218.) Additionally, Channi Kharbanda, the Principal Psychiatric Social Worker of Raritan Bay Mental Health Center, wrote a letter to Stephanie Jones, an employee of the Division of Disability Determination, about the improvements the Plaintiff had made as of May 29, 2008. (Id. at 219.) Channi Kharbanda indicated that the Plaintiff is currently prescribed Invega at 60 mg, Trazadone at 50 mg HS, Wellbutrin at 300 mg POD, and Ambien at 10mg. (Id.) She also indicated that Plaintiff had no evidence of psychosis; he denied hallucinations as well as suicidal/homicidal impulse, ideation, and intent; his concentration was unimpaired with no memory deficits; he has some problems with sleep when he has family conflicts; and he has been socializing more recently. (Id.) However, Plaintiff dropped out of treatment from August 2007 to January 2008, but, he is currently awaiting a "medical okay" so he can apply to vocational training and/or education. (Id. 220)

Next, The Plaintiff's Title II application for a period of disability and disability insurance benefits and his Title XVI application for Supplemental Security Income payments were denied on March 25, 2008 and Plaintiff subsequently asked for reconsideration on June 30, 2008. (Id. at 11.) The DDS then filed a DDS Disability Worksheet for reconsideration dated May 9, 2008 – June 27, 2008, which affirmed the prior decision to deny the claims. (Id. at 235.) Thereafter, the Plaintiff filed a request for an Administrative Law Judge hearing on July 18, 2008.

After this request was made the Plaintiff began receiving chiropractic treatment from Dr. Wolff from January 5, 2009 – July 16, 2009. (Id. at 248.) Then on August 13, 2009, in a report to Work First New Jersey, Dr. Wolff indicated disability for more than six months due to lumbar

disc herniation with stenosis and radiculopathy. (Id. at 237-238.) Additionally, in a September 24, 2009 Physical RFC assessment, Dr. Wolff indicated that the Plaintiff could lift and carry less than 10 pounds; he was limited to less than sedentary work; he could stand/walk for one hour in an eight hour workday; sit less than two hours in an eight-hour day; he could balance occasionally; could not climb, stoop crouch kneel or crawl; his ability to reach, handle, feel, and push/pull were affected; and lastly that Plaintiff was totally disabled. (Id. at 268-273.)

The Plaintiff then appeared and testified at a hearing held by ALJ James Andres on October 6, 2009, in Newark, New Jersey. (Id. at 11.) At step one and two of his analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity and that he suffered severe impairments of back pain, diabetes, obesity, knee pain, depression, anxiety, panic attacks, and impulse control disorder. (Id. at 13.) At step three, the ALJ concluded that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (Id.) At step four, the ALJ found that the Plaintiff had the residual functional capacity to perform light work and was capable of performing his past relevant work as a cashier. (Id. at 14, 17.) Therefore, based on his findings at step four, the ALJ did not consider step five as he had determined that Plaintiff was capable of returning to his past relevant work as a cashier.

## II.    LEGAL STANDARD

### A.    Determining Disability

In order to receive Supplemental Security Income benefits pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A

person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" Id. at § 1382c(a)(3)(B).  If he can perform substantial gainful activity within the national economy, then he will not be considered disabled. Id. at § 423(d)(2)(A).  Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

      The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of the plaintiff's disability. 20 C.F.R. § 404.1520.  At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. Id. at § 404.1520(a)(4)(i).  If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. Id. see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)).  At step two, if the plaintiff is not working, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii).  If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits. Id.

      If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  If it does, the plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d).  Additionally, if the plaintiff has a combination of impairments, no one of which

meets a listing, the ALJ will compare the plaintiff's findings with the "Listing of Impairments" for closely analogous impairments. 20 C.F.R. § 404.1526(3). If the combination of impairments are at least of equal medical significance to those of a listed impairment, the ALJ will find that the claimant's combination of impairments is medically equivalent to that listing. Id.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. At step four the ALJ must consider whether the plaintiff "can still do [his] past relevant work" given the plaintiff's residual functional capacity (RFC). 20 C.F.R. § 404.1520(a)(4)(iv). "This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work." Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two, and four of [the five-step] test." Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three involved a conclusive presumption based on the listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5)

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In the fifth and final step, the burden of production shifts to the Commissioner to determine, based on claimant's RFC and vocational factors, whether the claimant can perform other work in the national economy. 20 C.F.R. § 404, Subpt. P, App. 2. In determining whether there is existing employment in the national economy for the claimant, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience. Id. However, when determining job availability for plaintiffs

with exertional and non-exertional impairments, "the government cannot satisfy its burden under the Act by reference to the grids alone, because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence," to establish whether the plaintiff's non-exertional limitations diminish his residual capacity to perform any job in the national economy. Id. at 273; see also Bapp v. Bowen, 802 F.2d 601, 606 (2d Cir. 1986).  If this evidence establishes that the plaintiff can perform work in the national economy, then he is not disabled.

### B.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  "Substantial evidence" is the standard of proof in disability insurance benefit cases.  This Court must affirm the ALJ's decision if it is supported by substantial evidence. Dock v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); see also 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Sullivan, 970 F.2d at 1182.  To assist the court in this process, an ALJ must explain the rationale behind his decision.  And where there is conflicting medical evidence, the ALJ must adequately explain in

the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by plaintiff and corroborated by others who have observed him; and (4) plaintiff's age, educational background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). A medical opinion is given controlling weight when it is consistent with other substantial evidence. 20 C.F.R §§ 416.927(c)(1), (d)(2) (2007). However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all of the evidence [to decide] whether [the claimant] is disabled…." 20 C.F.R. § 416.927(c)(2).

## III.   DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability on April 30, 2007. (R. at 13.) At step two, the ALJ found that Plaintiff had the following severe impairments: back pain, diabetes, obesity, knee pain, depression, anxiety, panic attacks, and impulse control disorder. (Id.) At step three, however, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments after giving particular attention to listings for disorders of the spine (1.04), diabetes (9.08), knee pain (1.02A or 1.03), depressive disorder (12.04), anxiety and panic attacks (12.06), and impulse control disorder (12.08). (Id. at 14.)

At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work and that he was capable of performing his past relevant work as a cashier. (Id. at 14, 17.) The ALJ followed a two-step process in making his determination that Plaintiff had the residual functional capacity to perform light work. (Id. at 15.) First, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Id.) Second, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent that they are inconsistent with the residual functional capacity assessment. (Id.) The ALJ also noted that Plaintiff's testimony was inconsistent with the objective evidence because Plaintiff stated "that he can stand or sit for only fifteen to twenty minutes and that sometimes he needs help to lift a gallon of milk" (Id. at 16.) while the objective evidence including the RFC assessment indicated to the ALJ that "[t]he [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 and 416.967 (lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in and 8-hour day." (Id. at 14-15.) The ALJ concluded further that the "claimant has depression, anxiety, panic attacks, and impulse control disorder, with moderate restriction of the activities of daily living, moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  He is able to follow simple instructions, maintain attention, concentration, and adequate pace and persistence, and to relate and adapt to routine tasks in a work situation.  The claimant's residual functional capacity for light work is not significantly compromised by his additional nonexertional limitations." (Id.) The ALJ did not consider step five because based on the aforementioned he decided in step four

that the Plaintiff could return to his past relevant work and had the residual functional capacity to perform light work.

**B. Analysis**

Plaintiff argues that the ALJ erred in four respects.  First, Plaintiff contends that he is entitled to presumptive disability under paragraphs 1.04, 12.06, 12.04, and 12.08.  In respect to paragraph 1.04, Plaintiff contends that he meets the requirements of 1.04 because the ALJ used a doctor's opinion that misread the July 2007 MRI and the ALJ did not recognize that Plaintiff does not need to meet all possibilities of Listings.  In respect to paragraphs 12.04, 12.06, and 12.08 Plaintiff argues that the ALJ gave no explanation as to why the "B" and "C" criteria were not met.  Second, Plaintiff contends that the ALJ's exertional RFC is not supported by substantial evidence.  Third, Plaintiff argues that the ALJ's non-exertional RFC is both unexplained and unsupported by the evidence.  Fourth, Plaintiff contends that the ALJ did not observe the Commissioner's mandates with reference to a finding of non-disability predicated on the ability to perform past work.  In sum, Plaintiff argues that the ALJ decision is deficient at the third and fourth steps of the five-step evaluation.

*1. Determination of conflicting medical evidence regarding paragraph 1.04.*

The first issue before the Court is whether the ALJ improperly gave controlling weight to a doctor's review of an MRI when there was conflicting medical evidence.  It is established law that "where there is conflicting medical evidence the ALJ must adequately explain in the record his reasons for rejecting competent evidence." Brewster, 786 F.2d at 585.  Additionally, "[a] medical opinion is given controlling weight when it is consistent with other substantial evidence; however, if a medical opinion is either inconsistent with other evidence in the case or is

internally inconsistent, the Commissioner will weigh all of the evidence [to decide] whether [the claimant] is disabled." 20 CFR § 416.927 (c)(2).

In consideration of whether the Plaintiff met or equaled the 1.04 listing, the ALJ stated that the Plaintiff "has back pain, but the record does not show a disorder of the spine, resulting in nerve root or spinal cord compromise, with evidence of nerve root compression, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, atrophy and/or muscle weakness, accompanied by sensory or reflex loss, and positive straight leg raising in the sitting and supine position." (R. at 13-14.) The ALJ then stated that although the record shows some of the findings stated above, he nevertheless found that Plaintiff does not meet or equal the 1.04 Listing because orthopedic clinic notes regarding the 2007 MRI revealed: (1) no evidence of stenosis or nerve root impingement; (2) Plaintiff was not a surgical candidate; (3) Plaintiff was not disabled; (4) no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication, resulting in an inability to ambulate effectively. (Id. at 14.) However, part (1) of the above orthopedic clinic notes from the Robert Wood Johnson Medical Center is inconsistent with the radiology report from Raritan Bay Medical Imaging by Dr. Boruchov who found, "[b]road based disc herniation extending into the lateral recesses at L5-S1 resulting in bilateral neural foraminal stenosis and subarticular zone stenosis." (Id. 177.)

Although the orthopedic clinic notes from Robert Wood Johnson are inconsistent with the radiology report from Raritan Bay Medical Imaging by Dr. Boruchov, the ALJ focuses only on the orthopedic clinic notes and does not explain or weigh the other inconsistent medical evidence. As noted above, the radiology report by Dr. Boruchov specifically found stenosis, which is in direct contradiction with the orthopedic clinic notes. Accordingly this Court finds that the ALJ gave controlling weight to the orthopedic clinic notes from Robert Wood Johnson

without properly weighing other conflicting medical evidence in determining whether Plaintiff met the requirement of paragraph 1.04.

> 2. *Determination of whether the "B" and "C" criteria of paragraphs 12.04, 12.06, and 12.08 were adequately explained.*

Plaintiff contends that the ALJ did not give a sufficient explanation in his determination of whether the "B" and "C" criteria of paragraphs 12.04, 12.06, and 12.08 were met. In determining whether the ALJ gave a sufficient explanation this Court must consider whether the ALJ set forth substantial evidence supporting his findings. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).

As to the "B" criteria of paragraphs 12.04, 12.06, and 12.08, this Court finds that the ALJ gave substantial evidence to support his findings. The ALJ stated that Plaintiff has depression, anxiety, panic attacks, and impulse control disorder. (Id. at 14.) However, the ALJ further properly explained that Plaintiff does not meet the 12.04, 12.06, and 12.08 listings because Plaintiff has moderate restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Id.) These conclusions are supported by substantial evidence in the record and since 12.04, 12.06, and 12.08 require marked – not merely moderate – restrictions or difficulties resulting from the disorders, the ALJ's conclusion that Plaintiff did not meet the requirements of the listings is proper. As to the "C" criteria of paragraphs 12.04, 12.06, and 12.08, however, it is this Court's finding that the ALJ did not set forth substantial evidence to support his findings. The ALJ simply stated that, "None of the 'C'

criteria are met"; no further explanation was given. (Id.)  Without more, the conclusion is not capable of proper judicial review.  The ALJ must give an adequate explanation therefore as to why the "C" criteria were not met.

>    3. *Determination of whether the ALJ's exertional RFC is supported by substantial evidence.*

The second issue before this Court is whether the ALJ's exertional RFC finding is supported by substantial evidence.  Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  Additionally "an ALJ must explain the rationale behind his decision." Brewster, 786 F.2d at 585.

This Court finds that the ALJ's exertional RFC determination is supported by substantial evidence.  The ALJ decided that "[a]fter careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567 and 416.967 (lift and carry up to 20 pounds occasionally and ten pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8-hour day)." (Id. at 15.)  The ALJ primarily relies on exhibit 5F of the record, which is the physical RFC assessment that was conducted by Dr. Atienza on March 6, 2008.  The ALJ properly takes into account the conflicting evidence in the record, specifically 17F, a physical RFC assessment conducted by Dr. Wolff on September 24, 2009.

While not directly contradictory, the 2009 assessment is at odds with the 2008 assessment in several important aspects.  Specifically, the 2009 assessment found that Plaintiff could only lift and carry less than 10 pounds occasionally whereas the 2008 assessment found that Plaintiff could lift and carry up to 20 pounds occasionally; the 2009 assessment found that Plaintiff could

stand/walk for less than 1 hour in an 8-hour day whereas the 2008 assessment found that Plaintiff could stand walk for up to 6 hours in an 8-hour day; the 2009 assessment found that Plaintiff could sit for up to 2 hours in an 8-hour day whereas the 2008 assessment found that Plaintiff could sit for up to 6 hours in an 8-hour day; the 2009 assessment found that Plaintiff could never climb, stoop, crouch, kneel, or crawl whereas the 2008 assessment found that Plaintiff could occasionally climb, stoop, crouch, kneel, or crawl.

The ALJ, however, clearly explains why he relied on the 2008 RFC assessment by Dr. Atienza to a greater extent than the 2009 assessment by Dr. Wolff. The ALJ noted that Dr. Wolff's opinions are "contradicted by the MRI evidence, orthopedic clinic records noting that the claimant was not a surgical candidate and was not disabled, and by X-rays in his file from October 2008 showing that the claimant's cervical spine was normal and that he had mild degenerative spondylosis and degenerative disc disease at L1-L2 to L5-SI." (Id. at 17.) The ALJ acted within his authority when he found that, due to these contradictions, Dr. Wolff's opinion "deservers lesser weight under 20 CFR 404.1527 and 416.927."[1] Accordingly, we find that the ALJ did not err in making his decision regarding claimant's exertional RFC and his ability to perform light work.

> 4. *Determination of whether the ALJ's non-exertional RFC is both explained and supported by the substantial evidence of the record.*

The third issue before this Court is whether the ALJ's non-exertional RFC is properly explained by the ALJ and supported by substantial evidence. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might

---

[1] 20 C.F.R. §§ 404.1527(d)(4) and 416.927 states in part that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."

accept as adequate to support a conclusion." Richardson, 402 U.S. at 401.  Additionally "an ALJ must explain the rationale behind his decision." Brewster, 786 F.2d at 585.

Plaintiff claims that the ALJ's finding that "the claimant's residual functioning capacity for light work is not significantly compromised by his additional non-exertional limitations, as per se SSR 85-15, is "ridiculous, unsupported, non-evidentiary, and completely unexplained." (Pl.'s Br. at 38.)  However, Plaintiff fails to acknowledge the explanation given directly above the ALJ's statement on pages 14, 15, and 17 of the record.  There the ALJ clearly explains that, "[t]he [Plaintiff] has depression, anxiety, panic attacks, and impulse control disorder; moderate restriction of the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. He is able to follow simple instructions, maintain attention, concentration, and adequate pace and persistence, and to relate and adapt to routine tasks in a work situation. (R. at 14, 15, 17.)

Based on these findings, which are supported by the evidence in the record including the May 2008 assessment by Channi Kharbanda (Exhibit 10F, R. 219), the ALJ determined that Plaintiff's residual functional capacity for light work was not significantly compromised by his additional nonexertional limitations. (Id.)  Accordingly, this Court finds that the ALJ's non-exertional RFC is both explained and supported by the substantial evidence of the record.

> 5. *Determination of whether the ALJ properly decided Plaintiff was capable of performing his past relevant work as a cashier.*

The fourth and final issue before this Court is whether the ALJ properly decided Plaintiff was capable of performing his past relevant work as a cashier.  In determining whether Plaintiff is capable of performing his past relevant work as a cashier, the ALJ must describe the RFC in

terms of specific work limitations and/or capabilities on a "function by function basis". 20 CFR §§ 404.15; 416.945, SSR 96-8P.  The ALJ must also compare the RFC with the proper description of the physical and mental demands of past relevant work. 20 CFR §§ 150b; 416.960b; SSR 82-62, SSR 96-8P.  Additionally, the past relevant work must have lasted long enough for the Plaintiff to learn how to do the job and the work must also have been a substantial gainful activity. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), and 416.965.

      Plaintiff claims that the ALJ should have and did not make a comparison between the past relevant work and the Plaintiff's RFC; the ALJ did not explain the physical and mental demands of Plaintiff's past relevant work as a cashier; and also argues that Plaintiff's past work as a cashier does not satisfy substantial gainful activity because his monthly earnings did not meet the requirements of substantial gainful activity.

      The ALJ stated that the Plaintiff "has past relevant work as a cashier.  [Plaintiff] indicated that this work involved lifting up to 20 pounds. Since the claimant has worked as a cashier before and is able to live independently, socialize, and perform the activities of daily living, I find that he could perform his past relevant work as a cashier.  In conclusion, I find that in comparing the claimant's residual functional capacity with the physical demands of this work, the claimant is able to perform it as actually and generally performed." (R. at 17.)

      The ALJ, however, did not set forth evidence comparing the Plaintiff's RFC and the physical and mental demands of his past relevant work as a cashier.  He only stated that the work involved lifting twenty pounds, but never compared it to Plaintiff's RFC. (Id. at 17.)  Instead, the ALJ makes a conclusive statement that Plaintiff was able to perform his past relevant work. (Id.) There is also no analysis as to whether the Plaintiff's past relevant work as a cashier lasted for a sufficient period for Plaintiff to have learned the job or to have been considered a substantial

gainful activity. The ALJ simply stated that Plaintiff has worked as a cashier in the past. (Id.) This statement is conclusive and lacks sufficient explanation.

Accordingly, this Court finds that the ALJ's conclusion regarding Plaintiff's capability of performing his past relevant work as a cashier is not supported by substantial evidence. The ALJ needs to give a more detailed comparison of the Plaintiff's RFC and the physical and mental demands of Plaintiff's past relevant work. The ALJ also needs to establish whether the Plaintiff's past work as a cashier lasted long enough for Plaintiff to learn the job and be considered substantial gainful activity.

## IV.   CONCLUSION

The Court finds the ALJ erred in three respects: (1) the ALJ did not explain his reasoning for rejecting competent evidence regarding whether Plaintiff met the requirements of paragraph 1.04; (2) the ALJ did not adequately explain the "C" criteria of paragraphs 12.04, 12.06, and 12.08; and (3) the ALJ did not give substantial evidence to support his conclusion that Plaintiff was capable of performing his past relevant work as a cashier. The Court therefore remands the matter for further analysis in accordance with this Opinion. An appropriate order accompanies this Opinion.

DATED: October 20, 2011

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE